IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00038-CV

 

Wachovia Bank of Delaware, N.A. 

f/k/a First Union National Bank 

of Delaware,

                                                                      Appellant

 v.

 

Marjorie Gilliam and 

Patsy Charline Fowler,

                                                                      Appellees

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 66293

 



concurring Opinion










 

          We should not decide today what is not
necessary to the disposition of this appeal.  Specifically, whether service was
defective under section 17.045 is totally unnecessary to this decision.  All
that is necessary is a determination that service of process was effective upon
Wachovia under any of the available “long arm statutes.”  

          The simple removal of the dicta from
this opinion would have allowed it to issue with a unanimous vote.  However,
because the majority refused to remove the dicta from its opinion, and I
question not only the propriety of including the dicta, but the conclusions
reached in that dicta, I cannot join the opinion as written.  Accordingly, I
concur in the result only.

 

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Concurring
opinion delivered and filed June 29, 2005






                                           Appellee
 

From the County Court at Law
McLennan County, Texas
Trial Court Nos. 933087 CR1 & 933085 CR1
                                                                                                    

O P I N I O N
                                                                                                    

          Denis Hanley ("Hanley") and his son, Denis Hanley, Jr. ("Denis"), were convicted by a
jury of misdemeanor assault. Tex. Penal Code Ann. § 22.01 (Vernon 1994 & Supp. 1996). 
The court assessed punishment at twelve months in jail, probated for twenty-four months. The
appellants were tried together, and we will address their points of error in a single opinion. 
           Each appellant asserts two points. Both assert an identical point that the court erred in
"suppressing evidence which would have impeached the testimony of the complaining witness." 
Hanley complains that the court erred in denying his requests to recuse the district attorney's office
based on the appearance of impropriety. Denis complains that the court improperly instructed the
jury on "provoking the difficulty." We will affirm the judgment.
EVIDENCE AT TRIAL
          Portions of the testimony concerning events of February 5, 1993, are fairly consistent. 
That night Angela Hanley and her boyfriend, Jason Hardwick, were driving around in West. 
Angela, Hanley's daughter and Denis' younger sister, was fifteen and a half years old. Patrick
Wright, a seventeen-year-old whom Angela had previously dated, was also driving around West
with friends. Some time before midnight, Wright "flashed" the headlights in his vehicle, signaling
Hardwick's vehicle to stop. Hardwick and Wright exchanged words and agreed to meet later at
the parking lot of the West Bank and Trust.
          Angela asked Jason to take her home. She entered the house crying and upset. Angela told
her father and brother that Wright had told Hardwick that he was going to "whip [Hardwick's]
ass." Hanley testified that Angela told him that Wright "was coming after her again." Hanley and
Denis left the house around midnight to meet Wright at the bank parking lot. They took a baseball
bat with them. 
          The testimony concerning the events in the bank parking lot varied substantially among the
witnesses: 
jason hardwick
          Hardwick testified that the appellants arrived at the parking lot and told him that they were
there "making sure nothing was going to happen." When Wright arrived, he exited his car and
walked towards Hardwick. The appellants stepped in between Wright and Hardwick "and then
yelling broke out between them three." The argument escalated between Hanley and Wright as
Denis stood behind his father. Hardwick testified that Wright did not make any aggressive move
towards Hanley. Denis then hit Wright "more than once." Wright stumbled and fell off a two-
to three- foot ledge onto the asphalt on the lower level of the parking lot. Denis followed Wright
to the lower level. Hardwick saw Denis make a kicking motion, but did not know whether Denis
made contact with Wright. A crowd of approximately fifty people had gathered, and the crowd
then began attacking Denis. As Denis made his way back to his car, Hanley grabbed the baseball
bat. Hardwick and a friend took the bat away from Hanley and returned it to his vehicle.
matthew eubanks
          Matthew Eubanks testified that he is a good friend of Wright. When he and Wright arrived
at the parking lot, he remained in the car with the windows down while Wright began walking
towards Hardwick. Hanley approached Wright "and just started putting his finger in [Wright's]
face." According to Eubanks, Hanley initiated the argument and then "shoved" Wright, causing
him to jump down to the lower level of the parking lot. Denis hit Wright, causing him to fall
down, and then kicked Wright in the face three times. Eubanks testified that, prior to the attack,
Wright had not made a fist or an aggressive move towards Hanley. The crowd, which Eubanks
estimated at fourteen people, then scuffled with Denis. Eubanks saw Hanley with a baseball bat,
but stated that Hanley did not use it.
patrick wright
          Wright testified that he was walking towards Hardwick in the parking lot when he
encountered Hanley. He stated that Hanley was yelling and pushed him down a step. Hanley told
Wright that he was "screwing up his life and his daughter's life and his family's life." Wright saw
Denis, who was standing behind Hanley, clinching his fists. He did not see who hit him. He
testified that he suffered a broken nose and that his eye was swollen shut. 
denis hanley, sr.
          Hanley testified that he was watching movies with his wife, son, and daughter-in-law when
Angela returned from her date with Hardwick. He and Denis spoke with Angela. She told Hanley
that Wright was "coming after her again." Hanley stated that he and Denis went to meet Wright
"to remind [him] of the promises that he and his mother had made, that he would stay away from
my daughter." Hanley and Denis drove to the parking lot and remained in the car until they saw
Wright exiting his vehicle "at a very fast walk" "hollering" at Hardwick. Hanley intercepted
Wright asking him, "Do you know who I am?" Wright answered, "Yes." Hanley asked, "Do you
know why I'm here?" to which Wright responded, "Yes." 
          According to Hanley, "statements were made back and forth." Wright was leaning over
Hanley, cursing him.


 According to Hanley, Wright was "beginning to pivot on his feet and his
arm was coming up in a clinched fist. . . . He was completely focused on me and he was about
to hit me, punch me." Denis hit Wright twice the face. Wright, who was "obviously
unconscious," fell "face first into the asphalt." 
          Hanley testified that he did not push or shove Wright nor did he throw any punches. When
asked why he had taken the baseball bat, he stated, "Because I knew who these people were, I was
concerned that we would be attacked by a large group of people when we went down there." He
stated that there were forty or fifty people in the parking lot that night. Hanley testified that he
did not go to the parking lot to defend Hardwick; rather, he "wanted Pat Wright to do what he said
he would do, and that is to stay out of [Angela's] life." 
denis hanley, jr.
          Denis testified that Wright and Hanley "squared off" about three feet from each other in
the parking lot. Hanley told Wright, "You're ruining my life." Wright pointed at Hardwick and
said, "He's f---ing your daughter." Denis, who was about two feet behind his father, saw
Wright's fingers "twitching," saw his hand close, and saw him begin to turn. Denis testified,
"[T]hen without even -- almost like a reflex, I came out and I hit him approximately somewhere
around the eyes. . . . His head kind of snapped back . . . and then it went forward . . . and then
by that time I had brought my arm back again, and I followed through again." The second punch
landed in Wright's temple area and he fell "like a wet noodle," rolling over the ledge onto the
pavement below. Denis stated that his momentum carried him over the ledge and that one of his
feet probably landed on Wright's back. Denis denied that he had gone to the parking lot with the
intention to "beat up" Wright. 
dr. smith
          Dr. George Smith, the emergency room doctor who treated Wright, testified that Wright
had been knocked unconscious, that he suffered contusions, swelling, and abrasions, that he had
a possible nasal fracture, and that his injuries were consistent with being hit with a fist or kicked
in the face.
EXCLUDED EVIDENCE 
          Appellants complain that "the trial court erred in suppressing evidence which would have
impeached the testimony of complaining witness Wright." They argue that the exclusion of the
evidence misled the jury regarding Wright's assaultive nature and denied them the ability to
impeach his testimony. Appellants argue that they should have been allowed wide latitude in
cross-examining Wright on his credibility and bias. Tex. R. Crim. Evid. 610(b), 612(b). The
State argues that appellants have not preserved their complaint because they did not seek to have
the evidence admitted under Rule 612(b). Id. 612(b) ("impeaching a witness by proof of
circumstances or statements showing bias or interest").
motion in limine
          Prior to trial, the State filed a Motion in Limine seeking to exclude any reference to a prior
sexual assault on Angela by Wright alleged to have occurred in July 1992. Appellants argued that
the alleged assault was admissible under Rule 404(a)(2) of the Rules of Criminal Evidence to show
a pertinent character trait of the victim, Pat Wright, or under Rule 404(b) to show motive and
opportunity. Id. 404. Counsel for Denis argued that the background evidence was important to
understand "the general thrust of the Defendant's self-defense case." Counsel for Hanley argued
that the evidence was relevant "to their actions and their intent and their reasoning, and the reason
that they were acting in defense in this particular case of the daughter and sister."
          At the hearing on the motion in limine, Hanley testified that in July of 1992, Angela was
fifteen years old and was not allowed to date. She was, however, "seeing" Wright "socially." On
the morning of July 8, Hanley discovered that Angela and a girlfriend and Wright and another boy
had spent the prior night together.


 Angela told Hanley that she and Wright were lying on the
floor, that Wright had "removed her clothing, fondled her breasts, and with his hands and fingers
he caused her to bleed" by placing his finger in her vagina. 
          Hanley consulted an attorney and filed sexual assault charges against Wright with the
sheriff's department. After the charges were filed, Angela was subjected to "extreme threats and
harassment" at school. Hanley testified that he and Denis went to Wright's residence and spoke
with Wright and his mother. The charges were eventually dropped.
          Hanley testified that when Angela came home the evening of February 5, she was upset
and fearful both for herself and for what she thought Wright was going to do to Hardwick. 
Hanley stated that he wanted to talk with Wright and tell him that he would refile the criminal
charges if Wright did not keep his promise to stay away from Angela. Hanley stated that he and
Denis talked and decided "the best thing we could do was to go down there and see if we could
discourage him from continuing this." 
          On cross-examination, Hanley stated that Angela had been harassed "at the initiation of Pat
Wright by his friends and relatives," but that Wright had not personally engaged in such conduct. 
The trial judge concluded that he had heard no evidence of Wright's general propensity for
violence, and the court granted the State's motion in limine.
at trial
          After the State's direct examination of Wright, appellants argued that the State had "opened
the door" and that the alleged sexual assault went to their theory of self-defense "because at that
time [appellants] had a reasonable belief that [Wright] has some violent past history." The court
determined that self-defense had not yet been raised.
bill of exception
          After appellants rested their case and the court cleared the courtroom, they made an offer
of proof through a bill of exception. Angela testified that the assault happened in July 1992,
shortly after her fifteenth birthday. She and a girlfriend had told their parents they would be
spending the night with another girlfriend, Sarah. Instead, the girls met their boyfriends—Wright
and Huey Sherrill—at Sherrill's parents' house. Angela and Wright were to sleep on the floor. 
They were consensually kissing and fondling. Wright removed Angela's shorts and undid her bra. 
He then put his hand inside her underwear and put his fingers in her vagina. Angela asked him
to stop, but he did not. She told him again to stop, which he did, but then began again. When
Wright "tried to do it again" Angela "told him to quit and he got mad and he rolled over and went
to sleep."
          The next morning, the girls went to Sarah's house. Sarah's stepmother called the girls'
parents. Angela told her parents about the incident. Hanley filed criminal charges against Wright. 
He also met with Wright and his mother to ask them to leave Angela alone. Angela testified that
word quickly spread that her father was pressing charges against Wright. She testified about
incidents of harassment at school and that her family knew of the incidents. Angela stated that
Wright's threats against Hardwick on February 5 were actually directed at her. However, she
testified that Wright never directly threatened or harassed her.
          Hanley testified that after the July 1992 incident he obtained promises from Wright and his
mother that Wright would leave Angela alone. He filed criminal charges against Wright but
dropped them after Angela repeatedly begged him to because of the harassment she faced at
school. Hanley testified that he went to the bank parking lot to "remind [Wright] of his promises
and to tell him that I was going to refile the felony charges . . . if he did not stay away from
[Angela], as he agreed to."
          After the proffer of the bill of exception, counsel for Denis urged the court to allow
evidence of the incident because "it goes to the reputation and specific instances of violent conduct
that the victim in the -- the alleged victim in this case had previously conducted, and goes to the
probative -- whether -- That is probative of whether [Denis] reasonably believed the use of force
was necessary at that time." Counsel for Hanley argued that the evidence was relevant to show
appellants' intentions in going to the parking lot.
          The court stated that the jury had already heard testimony that Wright and Angela had
dated, that there was "bad blood" between the parties, and that Hanley and Denis believed Wright
had been harassing Angela. The jury had also heard Wright testify to Hanley's statements in the
parking lot that Wright was "ruining [Angela's] life" and Hanley's family's life. The court was
reluctant to put Angela on the stand in open court.
          To preserve a complaint for appellate review, the complaining party must make a timely,
specific objection and obtain a ruling on the objection. Broxton v. State, 909 S.W.2d 912, 918
(Tex. Crim. App. 1995). In addition, the point of error must correspond to the complaint made
at trial. Id. An objection stating one legal theory may not be used to support a different legal
theory on appeal. Id. 
          Appellants urged the court to admit the evidence on various theories: a pertinent character
trait under Rule 404(a)(2); motive, opportunity and intent under Rule 404(b); and self-defense. 
They did not raise the question of limited cross-examination until their Motion for New Trial. 
          Although great latitude should be allowed in cross-examining witnesses to reveal possible
bias, prejudice, or self-interested motives to falsify testimony, the burden of showing the relevance
of particular evidence to the issue of bias rests on its proponent. Janecka v. State, 739 S.W.2d
813, 830 (Tex. Crim. App. 1987). Moreover, the parameters of cross-examination for the
showing of bias lie within the discretion of the trial judge. Chambers v. State, 866 S.W.2d 9, 27
(Tex. Crim. App. 1993), cert. denied, — U.S. —, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). The
judge must balance probative value against prejudicial risks, i.e., undue prejudice, embarrassment,
harassment, confusion of the issues, and undue delay. Id. His decision will not be set aside
absent an abuse of discretion. Id.
          Even if appellants had preserved their complaint, we cannot say that the court abused its
discretion in excluding the evidence of the alleged prior sexual assault. Id.
          We overrule the points.



MOTION TO RECUSE
          Hanley's second point asserts that the court erred in denying his requests to recuse the
district attorney's office based on the appearance of impropriety. Prior to trial, Hanley filed a pro
se "Motion to Appoint Prosecuting Attorney Pro Tem" alleging that the District Attorney had a
conflict of interest requiring recusal. Tex. Code Crim. Proc. Ann. arts. 2.01, 2.07 (Vernon
1977 & Supp. 1996). He asked the court to appoint an assistant attorney general with whom he
had consulted. Hanley subsequently filed a "Motion to Recuse Prosecutor" citing State ex rel.
Eidson v. Edwards, 793 S.W.2d 1 (Tex. Crim. App. 1990). Both motions were denied without
a hearing. 
          The trial court may not disqualify a district attorney or his staff on the basis of a conflict
of interest that does not rise to the level of a due-process violation. State ex rel. Hill v. Pirtle, 887
S.W.2d 921, 927 (Tex. Crim. App. 1994). It appears from the record that Hanley, prior to the
February 1993 assault, had filed a grievance against an assistant district attorney. Hanley's
motions alleged that, because of the district attorney's "prejudice" and "predisposition," Hanley
was initially charged with a felony rather than a lesser offense or not at all. He also alleged that
the district attorney knew or should have known that the investigating police officer had not met
the minimum licensing requirements as a peace officer.
          The premise of Hanley's recusal motion was that he was improperly prosecuted because
of his prior dealings with the district attorney's office. Hanley was tried for misdemeanor assault. 
There was no testimony from the investigating officer or any other law enforcement officer. 
Under these circumstances, we cannot say that Hanley's allegations rise to the level of a due-process violation necessitating the disqualification of the district attorney and his staff. Id. We
overrule Hanley's second point.
PROVOKING THE DIFFICULTY
          Denis' first point asserts that the court improperly instructed the jury as to the law of
"provoking the difficulty" because the instruction improperly limited his "defense of third person." 
The court instructed the jury on self-defense, defense of a third person, and provoking the
difficulty. The jury was instructed that it should find Denis "not guilty" if the jury found Denis
reasonably believed the force was immediately necessary to protect Hanley from Wright's use or
attempted use of unlawful force. The jury was also instructed that self-defense is not available to
a defendant who provoked the other's use or attempted use of force. 
          As to the defense of a third person, the charge stated:
You are likewise instructed as part of the law of this case, and as a qualification of
the law on defense of a third person, that the use of force by a defendant against another
is not justified if the defendant knows that the person whom he is seeking to protect
provoked the other's use or attempted use of unlawful force, unless it is known to the
defendant that:
 
(a) the person whom the defendant is seeking to protect abandons the encounter,
or clearly communicates to the other his intent to do so reasonably believing he cannot
safely abandon the encounter, and
 
(b) the other person, nevertheless, continues or attempts to use unlawful force
against the person whom the defendant is seeking to protect.
 
So, in this case, if you find and believe from the evidence beyond a reasonable
doubt that Denis Hanley, Sr., immediately before the difficulty, then and there did some
act, or used some language, or did both, as the case may be, with the intent on his, Denis
Hanley, Sr.'s, part to produce the occasion for assaulting Patrick Wright, and to bring on
the difficulty with the said Patrick Wright, and that such words and conduct on Denis
Hanley, Sr.'s, part, if there were such, were reasonably calculated to, and did, provoke
a difficulty, and that on such account Patrick Wright attacked Denis Hanley, Sr., with
unlawful force, or reasonably appeared to defendant to so attack Denis Hanley, Sr., or to
be attempting to so attack Denis Hanley, Sr., and that the defendant Denis Hanley, Jr., did
then and there know of such words and acts on the part of Denis Hanley, Sr., and Patrick
Wright as aforesaid, but nevertheless assaulted the said Patrick Wright by the use of
unlawful force, to wit, by hitting him in the face or on the head with a bat or with his
hand, or by kicking him, then you will find the defendant guilty of assault.
(emphasis added).
          Denis objected to the charge "as a whole to the inclusion of the provocation issue." He
argued that the evidence showed that Hanley alone provoked the difficulty and thus the instruction
was inapplicable to his own defense. Further, Denis objected to the language "did then and there
know of such words and acts on the part of Denis Hanley, Sr." He argued:
So I think if the Court is going to charge the provocation issue, they also have to
charge the issue that Mr. Hanley, Jr., shared the same intent to provoke the incident as his
father did, and I think that mere knowledge or mere hearing it, as the Court has charged
the jury, and just know of such words and acts on the part of Denis Hanley, Sr., implies
that he does not have to share that same intent, just mere knowledge of them, and I think
that's incorrect, an incorrect manner of charging this provocation issue, if it is going to be
charged at all. And I do want to make it clear that I am objecting as a whole to the
provocation issue.
The court overruled his objections.
          Section 9.33 provides in part:
          Defense of Third Person
A person is justified in using force or deadly force against another to protect a third
person if:
 
(1) under the circumstances as the actor reasonably believes them to be, the actor
would be justified under Section 9.31 or 9.32 in using force or deadly force to protect
himself against the unlawful force or unlawful deadly force he reasonably believes to be
threatening the third person he seeks to protect; and
 
(2) the actor reasonably believes that his intervention is immediately necessary to
protect the third person.
Tex. Penal Code Ann. § 9.33 (Vernon 1994).
           Section 9.31, "Self-defense," provides that the use of force is not justified "if the actor
provoked the other's use or attempted use of unlawful force . . . ." Id. § 9.31(b)(4) (Vernon
Supp. 1996).
          By the language in section 9.33, the legislature placed the accused "in the shoes of the third
person." Hughes v. State, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986). "So long as the
accused reasonably believes that the third person would be justified in using [force] to protect
himself, the accused may step in and exercise [force] on behalf of that person." Id. "Clearly what
the legislature did intend was to justify use of [force] to protect a third person in any situation in
which the third person would apparently be justified in using [force] to protect himself." Id.
(emphasis original).
          Under the law of self-defense, Hanley would not have been justified in using force if he
had provoked the incident. Tex. Penal Code Ann. § 9.31(b)(4). In determining whether Denis
was justified in using force to defend Hanley under section 9.33, we place Denis into Hanley's
shoes. See Hughes, 719 S.W.2d at 564. If Denis reasonably believed that Hanley was justified
in using force to protect himself, Denis would be justified in stepping in and exercising that force
on Hanley's behalf. Tex. Penal Code Ann. §§ 9.31, 9.33. Conversely, if Denis reasonably
believed or knew that Hanley was not justified, i.e., that Hanley had provoked the incident, Denis
would not be justified in stepping in and using force. Id.
          The applicability of section 9.33 is based on the accused's assessment of the circumstances. 
Id. § 9.33(1). The evidence shows that Hanley and Denis were together from the time they left
their house until after Denis struck Wright. The charge authorized the jury to find Denis "not
guilty" if it found that Denis "reasonably believed" that the force he used was immediately
necessary to protect his father. The jury was also instructed that a defendant is not justified in
using force to defend a third person if the defendant "knows that the person whom he is seeking
to protect provoked the other's use or attempted use of force."


 (Emphasis added.) The
application paragraph of the charge required the jury to find that Hanley intended his words and
acts to provoke the difficulty and that Denis knew of these words and acts. 
          The court's charge adequately instructed the jury on Denis' defense-of-third-party theory. 
Denis, standing in Hanley's shoes, cannot be said to have "reasonably believed" that he was
justified in using force to defend Hanley when the jury found—as it did—that he "knew" of
Hanley's intentional acts of provocation. Thus, we do not believe the court's instruction
improperly limited Denis' defensive theory. We overrule his first point.
          Having overruled all the points, we affirm the judgments. 
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed May 1, 1996
Publish